UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JASMIN GIRON,

                Plaintiff,

  -against-

KRISTIN L. MANZUR

                Defendant.
-----------------------------------------------------------X

**DEFENDANT'S AFFIRMATION IN REPY**

**10 CV 3342 (JG-RLM)**

      LEONARD A. ROBUSTO, an attorney duly admitted to practice law in Federal Court for the Eastern District of New York hereby affirms the following statements under the penalties of perjury:

      1.     I am an attorney associated with the law firm of CONNORS & CONNORS, P.C., attorneys for Defendant, KRISTIN L. MANZUR. I am fully familiar with the facts and circumstances herein based on our review of the file maintained by this office.

      2.     This affirmation is made in Reply to Plaintiff's opposition to Defendant's motion to preclude the trial testimony of Dr. Charles Kincaid on the ground that Dr. Kincaid's proposed testimony is based almost entirely on unfounded speculation and that where it is not based upon speculation it is unnecessarily cumulative.

      3.     Defendant, in reply, reaffirms the arguments made in support of the original motion in limine, in short, that Dr. Kincaid prepared his report in a rush, and as such failed to follow his normal procedure of contacting the plaintiff's medical doctors, reviewing the relevant deposition transcripts, and reviewing all of the available medical records.  Due to this departure from normal practice Dr. Kincaid's report is filled with speculation regarding the recommended future treatment of the plaintiff in both scope and duration.  Moreover, it directly contradicts the testimony of the plaintiff's actual treating physicians.

      4.     Plaintiff, in his opposition, states that while certain aspects of Dr. Kincaid's report may seem speculative, the report "viewed as a whole" is not speculative, or cumulative, nor is it

at odds with the treating physicians, specifically Dr. Pan. This could not be further from the truth.

5. There are certain limited aspects of Dr. Kincaid's testimony and report which agree with the testimony of Dr. Pan. Specifically that the Plaintiff will require future back surgery and will require some medical care following the surgery. However, the limited follow up care recommended by Dr. Pan stands in stark contrast to the lifelong treatment suggested by Dr. Kincaid.

6. Dr. Pan testified, quite clearly, that the proposed back surgery has an 80% chance of success, with a likely outcome being a 50% reduction in the Plaintiff's pain. Under this prognosis, as stated by Dr. Pan, the Plaintiff will require some limited home health care, unless the plaintiff lives with family members who can help, and will wean off prescription drugs over the period of a few months. Dr. Pan does not prescribe lifelong physical therapy but suggests that after the surgery the plaintiff would require some physical therapy for "three months" followed by some exercises at home or in a "Bally's" type gym. (Dr. Pan, P 52, L 2-14).

7. Dr. Pan does not recommend lifelong treatment because his goal as a physician is for the Plaintiff to recover, reduce pain, lower her dependence on medication and possibly return to work. (Dr. Pan, P 46, L 4-8). Put simply, Dr. Pan wants the Plaintiff to recover as much as of her enjoyment of life as she can, and as quickly as medically possible.

8. Dr. Kincaid, on the other hand, being rather pessimistic about his own client's health, wishes to focus on the surgeries 20% failure rate and state that it is possible that the Plaintiff will require a lifetime of drug use, home assistance, physical therapy and medical treatment. Dr. Kincaid ignores the 80% chance that the future surgery will help the Plaintiff recover, and instead relies on the 20% to turn the 32 year old plaintiff into a lifelong drug dependant patient. This prognosis is clearly due to the fact that lifelong care is the vastly more expensive option, despite the fact that it is unlikely considering the surgeries 80% success rate.

Placing a multi-million dollar value to future care is speculatively based upon a 20% failure rate by definition.

9. Even assuming that the surgery fails, Dr. Kincaid's figures are still not based in reality. The figures derived by Dr. Kincaid were obtained without ever speaking to a single physician, reading a single transcript, or reviewing the plaintiff's complete medical records. Dr. Kincaid's report and proposed testimony are not based upon the actual recommendations and prognosis of the Plaintiff's treating physicians but are instead based upon the assumptions of Dr. Kincaid.

10. Plaintiff, in opposition, argues that Dr. Kincaid reviewed the medical records of the Plaintiff's treating physicians, and therefore has a solid basis for his conclusions. However a review of his testimony indicates that Dr. Kincaid only reviewed "some" of plaintiff's medical records. As he openly admitted, Dr. Kincaid failed to speak with, or review the records of Dr. Abbasi, plaintiff's current doctor, who "treated [the plaintiff] for pain management once every two weeks" (Kincaid, P 25, L 6-8).

> Q- "… no records from Dr. Abbasi. Correct?"
>
> A- "Right. No. I don't have any"
>
> Q- "… you have not had any conversations with Dr. Abbasi himself regarding his care or treatment [of] Miss Giron?"
>
> A- "That's Correct"
>
> Q- "And also no conversation with him regarding his diagnosis or prognosis"
>
> A- "No."
>
> Q- "And no conversation with him regarding his opinion regarding her need for future treatment from his office?"
>
> A- "That's correct" (Dr. Kincaid, P 25-26, L 18-5)

Despite his failure to review any records of Dr. Abbasi's treatment, or interview Dr. Abbasi, Dr. Kincaid postulates that the plaintiff will require lifelong prescription drug use to deal with her

pain. This prognosis is made by Dr. Kincaid, without any factual basis, and without a license to do so.

> Q- "Am I correct that your license as a rehabilitation counselor in the State of New Jersey does not allow you to perform pain management?"
>
> A- "That's correct" (Dr. Kincaid, P 26, L 9-13)

11. A review of Dr. Kincaid's report and deposition testimony indicates that he did not have a factual basis for any of his findings, other than the fact that the Plaintiff was recommended for surgery, and some limited rehabilitative care following the surgery.

12. Despite the fact that Dr. Pan only recommends physical therapy for three months followed by a gym membership, (Dr. Pan, P 52, L 2-14), Dr. Kincaid's life-care plan calls for lifelong physical therapy.

13. Despite the fact that Dr. Pan would only prescribe a home health aide "immediately after surgery… unless she has family members that can help" for a period of "two to three months", (Dr. Pan, P 54, L 15-22), Dr Kincaid's life-care plan calls for the lifelong assistance of a home health aide. Even in the "worst case scenario" to extend, without basis, "three months" to a life expectancy of over 50 years, is absurd.

14. Despite the fact that Dr. Pan's "goal is to wean the patient down from the medication as soon as possible after surgery… over a three to six month period", (Dr. Pan P 54, L 9-14), Dr. Kincaid states that the plaintiff will be required to take both Percocet and Tramadol for the rest of her life. As mentioned above this prognosis was made without ever speaking to, or reviewing records from, the Plaintiff's pain management doctor, Dr. Abbasi.

15. Even where Dr. Kincaid and Dr. Pan happen to agree, they still disagree about the scope and duration of treatment. Dr. Pan indicates that a bone stimulator, which is the last possible step for treatment, is a one-time expense (Dr. Pan, P 57, L 11-15), while Dr. Kincaid lists it as a device that will have to be replaced three times.

16. Lastly, Plaintiff argues that due to her age the plaintiff will likely develop future spinal complications that may require future surgeries. Dr. Pan does indicate that since the plaintiff is relatively young, she will likely require future surgical intervention during the course of her life. (Dr. Pan, P 79, L 20-25). However this only support's the Defendant's argument. Despite the fact that there is an indication of possibly future surgery, Dr. Kincaid's report cites the plaintiff's surgery as a "one-time expense." Even here, where it would likely be beneficial for Dr. Kincaid to agree with Dr. Pan, he fails to do so, because the two doctors never spoke to each other.

17. It is clear, from a comparison of Dr Pan's and Dr. Kincaid's transcripts that they are not on the same page regarding the Plaintiff's treatment and future care. Dr. Kincaid admits that he has no independent basis, other than the information given to him by the treating physicians, but he never spoke to those physicians; it follows that his entire report is based upon speculation, and not upon "sufficient facts" are required by Federal Rule 702 and the standard set in <u>Daubert v. Merrell Dow Pharms</u>. Dr. Kincaid is not licensed to diagnose the future treatment necessary for the plaintiff himself, and his report and testimony do not conform to the diagnoses and recommended treatment of the plaintiff's own physicians. As such he must be precluded from testifying at the time of trial.

18. Plaintiff cites the case <u>Frometa v. Diaz-Diaz</u>. This case, which contains three paragraphs which may be relevant to the case at bar, holds that Dr. Kincaid was not precluded because "of the evident research that he conducted" including "extensive quotes" from the Plaintiff's medical records. <u>Frometa</u> also indicates that Dr. Kincaid held conversations with medical staff. This opinion is clearly distinguishable. Unlike <u>Frometa,</u> in the case at bar Dr. Kincaid never spoke with medical staff (though in some cases he spoke with clerical staff), and he did not conduct a review of all the relevant medical records, including any records from Dr. Abbasi. It is unclear from the short decision in <u>Frometa</u> the extent that Dr Kincaid's research

formed the basis of his report, however it is clear that in the case at bar his report was not based upon the recommendations of the Plaintiff's treating physicians at all. Dr. Kincaid's conclusions are based upon Dr. Kincaid's own presumtions and assumptions.

19. Plaintiff suggests that Dr. Kincaid should not be "precluded from testifying in any **manner at trial**" (bold in original). there is an implication that Plaintiff suggests an alternative remedy of precluding him in part, or limiting him to testimony that falls in line with the Plaintiff's treating physicians. This remedy, while possible, will be very difficult to manage, as any findings not included in Dr. Kincaid's initial report will be prejudicial to the Defendant.

20. To allow Dr. Kincaid to testify at trial, in line with the treating physician's trial testimony <u>but opposed to his own report</u> will be prejudicial to the Defendant. Any testimony offered by Dr. Kincaid must conform with the information contained in his Rule 26 expert exchange. As his expert report is at odds with the testimony of the treating doctors, any testimony offered in support of the doctor's testimony will come as a complete surprise to the Defendant.

21. For example, since Dr. Kincaid never spoke with, or reviewed records from, Dr. Abbasi, he could not have possibly conducted the proper research necessary to determine the cost of any treatment recommended by Dr. Abbasi during trial. If Dr. Kincaid offers cost analysis for the treatment recommended by Dr. Abbasi, it will be the <u>first time anyone hears of this cost analysis, as it could not possibly be contained in his expert report</u>.

22. A limitation of Dr. Kincaid's testimony so that it is in line with the treating physician's testimony would resolve the issue regarding speculation, but would create an ambush. Therefore, the Court should not limit the testimony to conform to the proof – that is the very definition of cumulative testimony.

WHEREFORE, it is respectfully requested the motion herein be granted.

Dated: Staten Island, New York
January 25, 2012

                                                          LEONARD A. ROBUSTO (2639)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT'S ARRIMRATION IN REPLY was served via Electronic Court Filing this 25th day of January, 2012 to all counsel of record as indicated below.

_____
LEONARD A. ROBUSTO (2639)

TO: EUGENE D. ZINBARG, ESQ.
Attorney for Plaintiffs
82-15 Northern Boulevard
Jackson Heights, NY 11372